[Crim. No. 11885. Second Dist., Div. Four. May 24, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JACK ANTHONY WHITMORE, Defendant and Appellant.

Jack Anthony Whitmore, in pro. per., and Rollyn Jon Habeck, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, Jerry M. Ackeret and Ronald H. Gill, Deputy District Attorneys, for Plaintiff and Respondent.

JEFFERSON, J.—A jury found defendant guilty of first degree murder and of attempted murder. The penalty phase of the trial for murder ended in a mistrial with the jury unable to agree on a verdict. The court denied the People's motion for a new trial on the penalty question and sentenced defendant to state prison for the term prescribed by law.

In appealing from the judgment, defendant raises numerous contentions. He does not, however, question the sufficiency of the evidence to support his conviction. Indeed, the evidence —which includes eyewitness testimony and the positive identification of defendant by the surviving victim—can be described as overwhelming.

Briefly, these are the facts: On July 7, 1965, defendant was at his parents' home in Oxnard. He was in the army, stationed at Fort Ord, and had been given a pass over the 4th of July weekend. Instead of returning to Fort Ord, he decided to go to the mountains. He gathered up some camping equipment, a .22 caliber rifle and invited his 15 year-old half-brother, John Sweet, to accompany him. He arranged for two young men to drive them to a camping area near the City of Ojai. Enroute, defendant stopped and purchased a box of .22 caliber shells. After setting up their tent, defendant and Sweet went hunting. Defendant shot two quail which they prepared for dinner. That evening they talked. Defendant asked his brother if he would be afraid to shoot a person.

Defendant said he did not like the area and wanted to leave; that they needed a car. He remarked about shooting someone to get a car.

The next morning the victims, Mr. and Mrs. Russell Nelson, drove to the camping area for a picnic lunch. They parked their new 1965 Volkswagen at a picnic table near the place where defendant and Sweet were camped. Mrs. Nelson observed defendant target shooting. When defendant saw the Volkswagen he told Sweet that this was the car they needed. Defendant began to look for a spot where he could get a clear shot at the Nelsons without being seen. He was having difficulty locating a spot where he could see through the high bushes. Sweet said he had found a good vantage point and asked defendant if he was serious about shooting these people. Defendant assured Sweet he was serious. While Sweet stood off to defendant's left, defendant aimed and fired his rifle at Mr. Nelson who was sitting at the picnic table with his back to defendant. Mr. Nelson fell forward, struck in the back of the head by the bullet. Mrs. Nelson screamed for help. Defendant and Sweet returned to their campsite. Mrs. Nelson came over to them and asked them to help her put her husband into the Volkswagen and take him to a hospital. Defendant said nothing, but went over and got into the Volkswagen and drove it over near his tent. Mrs. Nelson turned and began to walk back toward the spot where her husband was lying. Sweet walked alongside her. As she walked away from him, defendant picked up the rifle, aimed and shot her. She fell, unconscious, the bullet having entered the back of her neck and having traveled through her head. Defendant and Sweet then dragged her into some brush on the other side of a stream. They then went over to where Mr. Nelson was lying and, after removing his wallet from his pocket, dragged him over and dumped his body on top of his wife. After attempting to cover up traces of blood at the Nelson's campsite, they loaded the Volkswagen with their camping equipment and left.

Mr. Nelson died from the gunshot wound. Mrs. Nelson survived the shooting. She had regained consciousness after defendant and Sweet had left and, after working herself out from under the body of her husband, was able to get to a dirt road where she was found and taken to a hospital. Defendant and Sweet were apprehended two days later in Tecate, Mexico. They were driving the Nelson's Volkswagen. The murder weapon was found in the trunk of the car.

## I

Defendant raises four contentions concerning rulings of the court prior to the presentation of evidence:

One: He maintains that the trial court's failure to grant his motion for a change of venue denied him a fair trial. Because of the local publicity generated by news stories and radio and television reports, it is asserted the jury could not have been impartial. The news reports in particular referred to were published at the time of defendant's arrest about four months before the trial. Defendant offers no evidence that any juror was in fact prejudiced by these reports.

The law presumes that each juror sworn is impartial; otherwise, the juror would have been challenged for cause. (*People* v. *King*, 240 Cal.App.2d 389, 401 [49 Cal.Rptr. 562].) Consequently, defendant has the burden of showing that some juror was accepted over his objection who did not measure up to the constitutional standards of impartiality or that because of the circumstances of the trial, prejudice was inherent. (*Irvin* v. *Dowd*, 366 U.S. 717 [6 L.Ed.2d 751, 81 S.Ct. 1639]; *People* v. *Carter*, 56 Cal.2d 549, 569-570 [15 Cal.Rptr. 645, 364 P.2d 477].) He has not carried his burden. Contrary to defendant's assertion, the record of the *voir dire* indicates that no juror who was accepted asserted a clear recollection of any news report of the case; each swore he was without bias or preformed opinion. The record further shows that the court correctly and scrupulously admonished the jury, both before and throughout the course of the trial, about putting aside any prior knowledge or opinion; weighing all of the evidence before forming any opinion; avoiding news reports of the case; arranging to have someone edit any newspapers they intended to read. No abuse of discretion is shown.

Two: In the same vein, defendant contends he was denied a fair trial because the court failed to allow him 11 additional peremptory challenges. Defendant used 20 peremptory challenges, all the law allows. (Pen. Code, § 1070.) The peremptory challenge is not a prescription of either the state or the federal Constitution. (*People* v. *Carter, supra,* 56 Cal. 2d 549, 574.) "The matter of peremptory challenges rests with the Legislature, limited only by the necessity of having an impartial jury. [Citations.]" (*People* v. *King, supra,* 240 Cal.App.2d 389, 400.)

Three: Defendant suggests that the jury was in effect "brainwashed" because of the *voir dire* regarding its opinion about the death penalty. He argues there should have been a

separate jury for the guilt and penalty phases of the trial so that this *voir dire* would not have been necessary in the guilt phase. Similar contentions have been consistently rejected. (*People* v. *Smith,* 63 Cal.2d 779, 789 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Riser,* 47 Cal.2d 566, 575 [305 P.2d 1]; *People* v. *Miller,* 245 Cal.App.2d 112, 138-139 [53 Cal.Rptr. 720].) Penal Code section 190 requires that the jury make a meaningful choice between the alternative punishments of death or imprisonment for first degree murder. To this end the challenge for implied bias, as provided in Penal Code section 1074, subdivision 8, is essential in a capital offense case. (See *People* v. *Riser, supra,* at pp. 575-576.) As the court stated in *People* v. *Smith, supra,* 63 Cal.2d 779, 789, "[S]ection 190.1 (Penal Code) discloses a directive of the Legislature that whenever possible the same jury shall serve at both phases of the trial for reasons of continuity and economy of effort. This directive of the Legislature neither denied the defendant due process of the law nor favors the prosecution over the defense. [Citation.]"

■ Four: Defendant asserts that he was entitled to a trial by the court sitting without a jury. After the jury was impaneled, defendant made a motion waiving his right to a jury trial. The People, however, refused to waive the jury and the court denied defendant's motion. Defendant did not have the right he asserts. While a defendant has a constitutional right to a jury trial, he does not have the correlative right to a trial without a jury. (*Singer* v. *United States,* 380 U.S. 24 [13 L.Ed.2d 630, 85 S.Ct. 783].) Consent by the prosecuting attorney is necessary notwithstanding that defendant insists on a trial by judge alone. (*People* v. *Spencer,* 170 Cal.App.2d 145, 149 [338 P.2d 484]; *People* v. *Eubanks,* 7 Cal.App.2d 588 [46 P.2d 789]; Cal. Const. art. I, § 7.)

Disposing of a similar contention urged in the *Singer* case, the Supreme Court said (at p. 36): "In light of the Constitution's emphasis on jury trial, we find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal case to undergo a jury trial against his will is contrary to his right to a fair trial or to due process. A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial

trial by jury—the very thing that the Constitution guarantees him.''

## II

██ Defendant contends that the prosecuting attorney was guilty of prejudicial misconduct when he stated in his opening statement that the People would introduce evidence of defendant's admissions of his guilt to a police officer, and thereafter failed to introduce such evidence. The district attorney referred in his opening statement to a conversation that a police sergeant named Ramos had with defendant after his arrest, and after Ramos had advised defendant of his constitutional rights. During the trial Sergeant Ramos was called by the prosecution. He testified that he had talked with defendant on July 15, 1965. At this point defense counsel interrupted and requested a discussion out of the presence of the jury. He stated, ''Your Honor, if we are getting into the area that I think we are getting into, I suspect it is going to take some time, somewhat similar in length to the previous hearing and procedure.'' The district attorney then asked that this argument be deferred in order that Mrs. Nelson (an eyewitness and the surviving victim) who was then present in court, could complete her testimony that day. The prosecution was permitted to withdraw Officer Ramos as a witness and to call Mrs. Nelson. The officer was never recalled.

It is noteworthy that the defense made no objection or assignment of error at any time during the trial concerning the reference made by the district attorney in his opening argument to defendant's admissions to the officer; nor did the defense request the recall of the officer to testify concerning the conversation; and no special instructions on the matter were requested. There is nothing in the record to indicate, as defendant suggests, that the prosecutor intended to place inadmissible admissions before the jury by way of opening statement. Were we to indulge in speculation about the reason why the officer was not recalled, the most logical assumption would be that the district attorney had decided, after Mrs. Nelson testified, that evidence of defendant's statements would add nothing to the case for the People, the testimony of the two eyewitnesses (Sweet and Mrs. Nelson) having established defendant's guilt. There is nothing to indicate the evidence concerning defendant's statement would have been inadmissible.

In any event, no showing is made of bad faith on the part of the district attorney. ''Unless the record indicates that the

statement not later supported by the evidence was made in bad faith or without intention of trying to support it by the evidence, it cannot be said that the district attorney was guilty of misconduct because he failed to produce such evidence. [Citation.]'' (*People* v. *Miller, supra,* 245 Cal.App. 2d 112, 128. See also *People* v. *Ney,* 238 Cal.App.2d 785, 793-795 [48 Cal.Rptr. 265] ; *People* v. *Nelson,* 224 Cal.App.2d 238, 252-253 [36 Cal.Rptr. 385].)

## III

■ Defendant asserts that the prosecution improperly cross-examined his expert witnesses eliciting evidence of his admissions to them. At the trial defendant sought to present a defense that he was mentally immature and not sufficiently sophisticated to form the requisite intent to murder. To this end, he called two psychiatrists who had examined him at his request sometime after his arrest. These experts offered opinions as to his mental and emotional stability based mainly on statements he made to them. On cross-examination the district attorney questioned the two witnesses concerning what defendant had said to them. The cross-examination was proper. The prosecution was entitled to question the doctors concerning any statements or declarations made to them by defendant which formed the foundation for their opinions. (*People* v. *Modesto,* 59 Cal.2d 722, 732 [31 Cal.Rptr. 225, 382 P.2d 33] ; Code Civ. Proc., § 1872 [now Evid. Code, § 721].) There is no basis for the argument made by defendant that the statements were privileged. If any privilege existed, it was waived when the doctors were called by defendant as witnesses. (*Winegar* v. *Gray,* 204 Cal.App.2d 303, 310 [22 Cal.Rptr. 301].)

## IV

■ Defendant questions the admissibility of certain evidence. It is contended that the trial court committed prejudicial error in admitting a number of black and white photographs of the deceased. Further, defendant maintains that the .22 caliber rifle (established to be the murder weapon) should not have been admitted because it was illegally seized.

Concerning the photographs referred to, a number were used by the autopsy surgeon for identification purposes and to explain the cause of death. The others, taken at the scene of the crime, showed the place where the body was found and its position. The photographs were clearly relevant. ''Whether the probative value of photographs offered into evidence outweighs the possible prejudicial effect is a question for the trial

court in the exercise of its judicial discretion.' [Citations.]''
(*People* v. *Sanchez,* 65 Cal.2d 814, 828 [56 Cal.Rptr. 648, 423 P.2d 800].) No abuse of discretion is shown here.

 Next, we consider the question of the legality of the seizure of the rifle. As a foundation for its introduction, Alfred Dart, a San Diego Deputy Sheriff, testified that he and a partner officer, Deputy Crawford, were in Tecate, Mexico, on July 10, 1965. They were standing in front of the local police station with Chief Aguilar, the Chief of Police of Tecate, when they observed defendant drive by in a white 1965 Volkswagen, with a temporary license number 0828555. Deputy Dart had received a radio broadcast alerting him to be on the lookout for defendant and Sweet, stating they were wanted for murder in Ventura County. The broadcast further indicated they were believed headed for Mexico driving a stolen 1965 white Volkswagen with a temporary license 0828555, and registered to a couple by the name of Nelson. Dart had relayed this information to Chief Aguilar. After they spotted the Volkswagen, the officers got into the chief's vehicle and pursued and stopped the Volkswagen. As he got out of the car, defendant asked "What is going on?" When he was informed that they were wanted in connection with a murder in Ventura County, defendant replied, "Well, that was an accident." Deputy Dart also asked defendant "where the gun was," and defendant replied, "in the trunk."[1] About 15 or 20 minutes later, after the officers had taken defendant, Sweet and the Volkswagen to the police station, the car was searched and the rifle was removed from the trunk.

Defendant claims the search was not incidental to his arrest because the car was not searched out on the highway where he was arrested. The evidence established that the officers had probable cause to arrest defendant and to seize the car. This is not a case of impounding a suspect's property to protect it. The car was seized as stolen property. The checking of it for additional evidence, especially in light of defendant's statement indicating the murder weapon was in the trunk, was reasonable under the circumstances.

---

[1]No issue was raised at the trial (or is now raised) in respect to the possible applicability of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], to these statements of defendant. We note in passing, that the trial followed in point of time both decisions. It is evident the defense was aware of the rules established in these decisions and elected not to pursue the matter, thus waiving any issue.

## V

■■ Defendant claims the court erred in instructing the jury. He suggests the instruction on felony murder should not have been given. Penal Code, section 189 provides: "All murder . . . committed in the perpetration or attempt to perpetrate . . . robbery . . . is murder of the first degree. . . ." Defined, "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) The evidence overwhelmingly establishes that Mr. Nelson was murdered by defendant in the perpetration of a robbery (of his wallet and Volkswagen). The jury was properly instructed that if it found defendant had murdered Mr. Nelson in the perpetration of robbery he was guilty of first degree murder.

Looking at the instructions as a whole, it is evident that the jury was thoroughly and properly instructed by the trial court on the law applicable to this case, both during the course of the trial when a special point arose, and in the formal instructions.[2]

We have considered the other contentions urged by defendant and find them to be without merit and not warranting further discussion.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 6, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1967.

---

[2]We note the "Affidavit of the Court Reporter Re Correction of Transcript on Appeal" and the accompanying request of the Attorney General to correct a "reporting error of the court reporter," and we direct the correction in accordance with that affidavit.