471 P.2d 582

**STATE of Idaho, Plaintiff-Respondent,**

v.

**William Perry RADABAUGH, Defendant-Appellant.**

**No. 10574.**

Supreme Court of Idaho.

June 25, 1970.

728

B. A. McDevitt and Warren S. Derbidge, Pocatello, for appellant.

Robert M. Robson, Atty. Gen., and James R. Hargis, Asst. Atty. Gen., Boise, for appellee.

DONALDSON, Justice.

William Perry Radabaugh (defendant-appellant) was charged by an Information with two counts of First Degree Murder in the fatal shooting of Lena Johns and Mary Villanova. The incident occurred on May 29, 1968, at the Lewis Hotel, Montpelier, Idaho.

Radabaugh lived at the hotel, operated by Mrs. Lena Johns, assisted by her sister, Mrs. Mary Villanova. He did chores and otherwise aided the two women in the operation of their hotel.

On the night of the shooting (May 29, 1968), Radabaugh visited with both Lena Johns and Mary Villanova at the Lewis Hotel in the presence of a Mr. and Mrs. Trussel. Radabaugh, the defendant-appellant, testified that after the Trussels left he conversed with Lena Johns and consumed two bottles of beer. The next thing

Radabaugh recalled was "seeing Mary lying on the floor in a pool of blood." Radabaugh was standing there in the middle of the floor and there he observed a gun. He then left the hotel and went to Watkin's Bar whereupon he asked a Mr. Esterholdt to call an ambulance "because of Mary being there in that pool of blood." Radabaugh took the stand and testified, "I did not to my knowledge kill Mary Villanova." His testimony furthermore reveals that he stated he did not "to his knowledge" kill Lena Johns. However while at Watkin's Bar, Radabaugh stated in the presence of Marie Seabold and Ralph Jones that he shot the two women.[1]

During Radabaugh's trial, testimony probative of the attitude of the two victims toward the defendant was admitted over defendant-appellant's objection.

Subsequent to trial, the jury returned a verdict of guilty of Murder in the Second Degree of Lena Johns and Mary Villanova. Radabaugh received a sentence of thirty years for each crime, each term to run consecutively, in the Idaho State Penitentiary.

William Perry Radabaugh has appealed to this Court from the Judgment of Conviction and from the district court's Order denying his motion for a new trial.

Appellant first contends that the trial court erred by failing to separate the two counts charged in the Information and refusing to grant his motion for separate trials since the charging of more than one crime in an Information is improper where prejudice can result from the trial of both of the alleged offenses before the same jury.

California has enacted a statute [2] similar to our own [3] which permits a single accusatory pleading (indictment, information) to charge two or more different offenses if the two are connected together or are similar. The California courts adhere to the rule that only in cases where the trial court has abused its discretion will the decision denying severance be disturbed on appeal.

"The determination whether a motion for severance of trial should be granted always rests within the sound discretion of the trial judge. There can be no clearly defined rule for determining when a defendant is entitled to a separate trial because the exercise of discretion means that the decision must be based upon a

---

1. Testimony, Marie Seabold.
   "Q. I wonder if you would tell the jury and the court please what he said?
   A. He had his head on the bar when I walked in and he raised his head, this here Mr. Jones had just talked to me and then Mr. Radabaugh raised his head and he said yes I shot them did Wilf go for the ambulance and the police." See F.N. 6.

2. Cal.Pen.C.A. § 954.
   "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of

which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

3. "19–1432. Charging two or more offenses in same indictment.—Two (2) or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan."

just and proper consideration of the particular circumstances which are presented to the court in each case. Only where an abuse of discretion is shown will the ruling of the trial court be disturbed upon appeal. (People v. Perry, supra [195 Cal. 623, 234 P. 890]; People v. Tinnin, supra [136 Cal.App. 301, 28 P.2d 951].)" People v. Eudy, 12 Cal.2d 41 at 46, 82 P.2d 359 at 361 (1938).

When considering if the consolidation of charges is proper the courts have recognized such factors as whether the crimes charged arose out of a single set of circumstances [4] and whether there is a common element of substantial importance involved in the commission of the offenses.[5] Applying these criteria to the case at bar (two victims of a fatal shooting found in the same apartment at the same time), it is apparent that both of the aforementioned tests are satisfied. Furthermore the Idaho statute permits the charging of two or more offenses in the same indictment if they are based on two or more (separate) acts or transactions which are connected together. The killings were clearly "connected together" as evidenced by the unities of time, place, and modus operandi. This conclusion is confirmed especially in light of Radabaugh's incriminating admissions which substantiate the fact that Radabaugh's acts were integral components of a common scheme or plan.[6] In the case at bar appellant has failed to point out wherein the joint trial of the two charges worked to

his prejudice. His unsupported statement is not sufficient. People v. Northcott, 209 Cal. 639, 289 P. 634, 70 A.L.R. 806 (1930).

■■ Appellant contends that the trial court erred by refusing to grant his motion for additional peremptory challenges. Radabaugh maintains that he was entitled to twenty peremptory challenges rather than ten as provided for by I.C. § 19–2016 [7] since two offenses were charged in the indictment pursuant to which Radabaugh was prosecuted. California has enacted a statute similar to I.C. § 19–2016 [8] and it has been held in that jurisdiction that a defendant who is tried on a single indictment charging two capital offenses of the same degree is not entitled to twice the number of peremptory challenges prescribed by statute. People v. Potigian, 69 Cal.App. 257, 231 P. 593 (1924); People v. Whitmore, 251 Cal.App.2d 359, 59 Cal.Rptr. 411 (1967). Furthermore the record does not reveal that appellant exercised his ten peremptory challenges and, if such be the case, there was obviously no error committed by the trial court's refusal to grant his motion.

Appellant next contends that the trial court erred by allowing into evidence testimony tending to show the attitudes harbored by the victims regarding the defendant. The testimony tended to show that the victims were afraid of the defendant and furthermore that they had asked him to leave their hotel [9] and that they were plan-

---

4. People v. Biehler, 198 Cal.App.2d 290, 17 Cal.Rptr. 862 (1961).

5. People v. Williams, 189 Cal.App.2d 29, 11 Cal.Rptr. 43 (1961).

6. Testimony of Ralph Jones that William Perry Radabaugh, defendant-appellant, said, "I just shot Mary and Lena." (see also, F.N. 1).

7. "19–2016. Number of peremptory challenges.—If the offense charged is punishable with death or with imprisonment in the state prison for life, the defendant is entitled to ten and the state to ten peremptory challenges. On a trial for any other offense the defendant is entitled to six and the state six peremptory challenges."

8. Cal.Pen.C.A. § 1070.
   "1070. [Number of peremptory challenges.] If the offense charged be punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to twenty and the state to twenty peremptory challenges. On a trial for any other offense, the defendant is entitled to ten and the state to ten peremptory challenges."

9. The following testimony of Mr. Joseph Trussel was objected to by defense counsel:
   "Q. Did she say anything else, sir, concerning the defendant?
   A. (By the Witness) Oh, yeah, she says I'm scared to death of him, not so bad when he's drinking beer, but when

ning to close the hotel. Appellant contends that the statements complained of are hearsay and thus inadmissible since they were extra-judicial (made outside of court), not subject to cross-examination, and offered as proof of the facts contained therein. Appellant furthermore believes that the testimony should have been excluded since it was completely irrelevant to the issues presented by the case and only served to create prejudice in the minds of the jury.

▮ The statements objected to by appellant fall into two distinct categories. The first ("I'm scared to death of him, not so bad when he's drinking beer, but when he's drinking whiskey he's crazier than a tick."), was a declaration offered to show the state of mind or feelings of the declarant, i. e., the deceased victim.

"Declarations showing the declarant's then presently existing state of mind are admissible when relevant. If the declaration is offered to evidence the declarant's state of mind circumstantially, the hearsay rule is not encountered. Loetsch v. New York City Omnibus Corp., 291 N.Y. 308, 52 N.E.2d 448. If the declaration is offered for the truth of the fact asserted, as where the declaration is 'I hate X,' the declaration is hearsay but is admissible under the state-of-mind exception to the hearsay rule. Since the declaration is admissible in either event, it seems of no practical importance to determine in a given instance whether the declaration offered to show the declarant's existing state of mind is technically hearsay or non-hearsay." Richardson on Evidence, § 270, pp. 260, 261, 9th ed. (1964).

Evidence tending to show the mental state of the victim and ill-feeling or hostility between decedent and defendant is admissible. Bustamonte v. People, 157 Colo. 146, 401 P.2d 597 (1965). Furthermore the district court expressly limited the purposes for which the testimony was to be considered.[10] Bustamonte v. People, *supra*.

"Declarations of the deceased, showing her state of mind toward the appellant, were admissible. Wigmore on Evidence, vol. 1, § 102; Commonwealth v. Howard, 205 Mass. 128, 91 N.E. 397; Porter v. State, 86 Tex.Cr.R. 23, 215 S.W. [201] 211." Sapp v. State, 87 Tex. Cr.R. 606 at 615, 223 S.W. 459 at 468 (1920).

Thus since the first statement was probative of the attitudes and feelings (fear) of the victim towards Radabaugh, it was properly admitted. The second statement, ("he might as well get his stuff and go back to skid row where he came from, because she was closing the hotel and moving to Texas with her son") was offered to show motive on the part of Radabaugh and is properly admissible since Radabaugh admitted that he had been notified that the hotel was to be closed and that the two ladies were moving back to Texas. When it is proved that "D" (murder victim) made a statement to "X" (the defendant-appellant, Radabaugh), with the purpose of showing circumstantially, the probable state of mind of "X" (the defendant-appellant, Radabaugh), such as notice, knowledge or *motive* or to show information which "X" had as bearing on the subsequent conduct of "X" (defendant-appellant, Radabaugh), the evidence is not subject to attack as hearsay. McCormick, Evidence, § 228, p. 464 (1954).

"Explanatory circumstances and declarations connected with the commission of a homicide, which have a tendency

he's drinking whiskey he's crazier than a tick.
    *  *  *  she told him he might as well get his stuff and go back to skid row where he came from, because she was closing the hotel and moving to Texas with her son."

10. Instruction No. 25 given by the trial court.
    "You are instructed that the conversation of Joseph Trussel and Ruth Trussel with Mary Villanova can be considered by you to show a state of mind of Mary Villanova as to her feelings and as to the relationship between her and the defendants and for no other reason."

to shed light on the motives of the parties, are admissible in evidence, including antecedent declarations made by the deceased and the defendant, where they form some link in the chain of circumstances, explanatory of their motives * * *." Lowrey v. State, 87 Okl.Cr. 313 at 339, 197 P.2d 637 at 651 (1948); Starks v. State, 67 Okl.Cr. 156, 93 P.2d 50 (1939).

The testimony was pertinent to show the state of mind and attitude of the deceased and probable state of mind of the defendant. The jury was instructed as to the limited purpose for which they were to consider this testimony.[11] We therefore hold that the statements were properly admitted into evidence.

▆▆▆ The next question presented by this appeal is whether the trial court erred by refusing to give defendant's requested instruction[12] regarding "absence of motive" and its favorable effect with respect to the defendant's presumption of innocence.

"In criminal law motive may be defined as that which leads or tempts the

mind to indulge in a criminal act * * *." 21 Am.Jur.2d, Criminal Law, § 85, p. 166. Motive is *not* an essential element of any crime unless it is made so by statute.[13] The applicable statute, pursuant to which Radabaugh was prosecuted, makes no reference to motive.[14] The authorities are in accord that although motive is relevant to the ultimate issue of defendant's guilt or innocence, presence or absence of motive becomes important only when the evidence fails to make out a satisfactory case. 21 Am.Jur.2d Crim.Law, § 85, p. 167. In the case at bar the evidence clearly established the offense. Thus it was unnecessary for the prosecution to introduce evidence of "motive." However it was the prerogative of the prosecution to do so and once evidence of motive was introduced into the case,[15] it would have been proper for the trial court to instruct the jury with respect to that issue.

"Where there is evidence as to the existence or absence of a motive for the crime, the court may and should fully and clearly instruct the jury as to their right and duty to consider facts in evidence which tend to show the presence

11. See F.N. 8; Instruction No. 26 given by the trial court:
   "You are instructed that the conversation of Verda Homer with Lena Johns can be considered by you to show a state of mind of Lena Johns as to her feelings and as to the relationship between her and the defendant and for no other reason."

12. Defendant's Requested Instruction regarding absence of motive.
   "You are instructed that evidence of motive is sometimes of assistance in removing doubt and completing proof which otherwise might be unsatisfactory. Motive may be shown by positive evidence or by facts surrounding the act if they support a reasonable inference. When thus proved, motive becomes a circumstance, but nothing more than a circumstance, to be considered by you. The absence of motive is equally a circumstance to be reckoned with, but on the side of innocence, tending to support the presumption of innocence, and to be given such weight as you deem proper."

13. 21 Am.Jur.2d Criminal Law, § 85; State v. Tuttle, 58 Ariz. 116, 118 P.2d 88 (1941); State v. Knox, 236 Iowa 499, 18 N.W.2d 716 (1945); Re Peterson, 15 Utah 2d 27, 386 P.2d 726 (1963).

14. "18-4003. Degrees of murder.—All murder which is perpetrated by means of poison, or lying in wait, torture or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary, kidnaping or mayhem, is murder of the first degree. Any murder of any peace officer of this state or of any municipal corporation or political subdivision thereof, when the officer is acting in line of duty, and is known or should be known by the perpetrator of the murder to be an officer so acting, shall be murder in the first degree. All other kinds of murder are of the second degree."

15. Testimony indicative that the victims were going to close the hotel, move back to Texas and appellant would be out of a job.

or absence of a motive for the offense charged, as a circumstance in determining the guilt or innocence of accused * * *." 41 C.J.S. Homicide § 359, p. 135.

" * * * the largest group of courts takes the view that whether a motive instruction must be given is to be determined by the state of the record, and that where a live issue as to motive is presented to the jury, by the evidence for either or both parties, the court should give, upon proper request, a properly framed instruction as to the necessity and effect of evidence of motive." Annot. 71 A.L.R.2d 1025 at 1027.

Where evidence of motive was admitted it has been held not material error that the jury was not instructed as to motive where intent which moved the defendant was shown. State v. Clinton, 278 Mo. 344, 213 S.W. 841 (1919); State v. Hulbert, 299 Mo. 572, 253 S.W. 764 (1923). Thus the issue of motive and specific instructions relating thereto become significant only where there is a dearth of evidence tending to establish guilt. Although this Court has decided that once the issue of motive has been introduced into the case, either party is entitled to a proper instruction on the issue,[16] provided it is requested in a timely fashion, the Court does not agree that failure to have given the instruction in the case at bar was prejudicial error. In State v. Gonzales, 92 Idaho 152, 438 P.2d 897 (1968)

this Court considered the question and held that the trial court properly refused the instruction requested by the defendant since there was evidence of motive. Also, I.C. § 19–2819 [17] expressly provides that defects which do not affect the substantial rights of the parties are to be disregarded. See also, State v. Orr, 53 Idaho 452, 24 P.2d 679 (1933).

Appellant calls our attention to the trial court's failure to give his requested instruction cautioning the jury that statements or admissions made by an individual which are influenced by hope, fear, or the calamity of the situation are likely to be untrue.

The propriety of cautionary instructions applied to admissions rests largely in the discretion of the trial judge. 53 Am.Jur. Trial, § 612, p. 482. Matters within the discretion of the trial court will not be reversed on appeal unless it appears that the court abused its discretion. State v. McClurg, 50 Idaho 762, 300 P. 898 (1931). Assuming however that the instruction requested by Radabaugh was given, this would have been error since the requested instruction was an incorrect statement of the law and furthermore was a direct invasion of the jury's province.[18]

"It is generally recognized that the trial court may properly refuse any instruction which directs the jury as to the strength or weakness of testimony, or as to its weight or sufficiency. 88 C.J.S. Trial

16. The early Idaho case of State v. McLennan, 40 Idaho 286, 231 P. 718 (1925), considered the propriety of the trial court's refusal to give an instruction relating to the defendant's absence of motive. However the Supreme Court in that case concluded that the instruction was properly refused because of a defect in form.

17. I.C. § 19–2819:
"Judgment upon appeal—Technical errors disregarded.—After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which did not affect the substantial rights of the parties."
Also pertinent is I.C. § 19–3702:

"Immaterial errors disregarded.—Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right."

18. The authorities are in accord that a simple cautionary phrase is all that would be necessary to protect the defendant should the trial court, in its discretion, decide to give a cautionary instruction. Cal. Jury Instructions, Criminal, 2.71 ¶ 4, "Evidence of an oral admission of the defendant ought to be viewed with caution."

**734**

§ 285, p. 783, citing cases, including Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283. It is equally improper for the court to minimize or belittle evidence. 88 C.J.S. Trial § 285, pp. 796–797, citing cases, including Allman v. Malsbury, 224 Ind. 177, 65 N.E.2d 106." United States v. Bookie, 229 F.2d 130 at 135 (7th Cir. 1956).

The holding announced by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966) is not applicable to the instant case because the record clearly shows that statements uttered by Radabaugh were made prior to his being taken into custody.[19]

"The constitutional issue we decide in each of these cases is the admissibility of statements obtained from a defendant questioned while in custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. 436 at 445, 86 S.Ct. 1602 at 1612 (1966).

For these reasons we find that no error was committed by the district court in failing to give the instruction requested by the defendant.

■ Appellant contends that he was prejudiced by an instruction given by the trial court which assumed a fact in issue since it seemed to indicate that the appel-

lant used the murder weapon. It is true that I.C. § 19–2101(6) [20] prohibits the trial court from commenting on the facts but the instruction complained of was directed to the issue of intent and not to the issue of whether the appellant did in fact use the weapon in question. Instructions must be considered in their entirety and not according to isolated paragraphs. An error in a particular instruction does not warrant a reversal if the charge as a whole covers the law of the case fairly. State v. Jurko, 42 Idaho 319, 245 P. 685 (1926); 5 Wharton's Criminal Procedure, § 2093, p. 261. The record indicates that instruction No. 2 informs the jury that the instructions should be "considered and construed together." Furthermore instructions Nos. 8 and 39 clearly explain to the jury that they alone are the sole judges of the facts and that the court has no power to directly or indirectly indicate its view upon the merits of the case.[21]

■ Appellant has assigned as error the trial court's failure to inform the jury that defendant had pleaded not guilty by reason of not being conscious of committing the acts charged. In Idaho there are four kinds of pleas to an indictment, viz., (1) guilty; (2) not guilty; (3) a former judgment of conviction or acquittal of the offense charged, which may be pleaded

19. The statements were made by Radabaugh while in Watkin's Bar to Mrs. Marie Seabold and Ralph Jones. See Footnotes No. 1 and No. 6.

20. "19–2101. Order of trial.—The jury having been impaneled and sworn, the trial must proceed in the following order:
* * *
6. The judge must then charge the jury if requested by either party; he may state the testimony and declare the law, but must not charge the jury in respect to matters of fact; such charge must be reduced to writing before it is given, unless by the mutal consent of the parties it is given orally."

21. Instruction No. 8 given by the trial court:
"The jury are the sole and exclusive judges of the facts, of what has been

proven in this case, of the credibility of the witnesses, and of the weight to be given to the testimony of each and all of them * * *."
Instruction No. 39 given by the trial court:
" * * * I have heard it suggested that jurors sometimes scrutinize instructions with a view of ascertaining therefrom the personal opinion of the Court upon the merits of the case. The Court has no power to charge you upon the facts or either directly or by indirection indicate to you its views upon the merits. It is the duty of the Court to charge you upon the law only * * * you have no right to assume that the Court has any views as to the verdict that should be arrived at as the result of your deliberations."

 

either with or without the plea of not guilty; (4) once in jeopardy. I.C. § 19–1712. The record clearly reveals that the jury was specifically instructed that:

" * * * To the information filed against said defendant William Perry Radabaugh, he has heretofore entered a plea of not guilty to both Count I and Count II * * *."[22]

Thus pursuant to I.C. § 19–1712 (set forth above) only one of four pleas could be entered by the defendant to the indictment. A plea of "Not guilty by reason of not being conscious of the acts charged" is not therefore permissible. However the jury was carefully, fully, and competently instructed by the trial court regarding the issue of defendant's consciousness.

> "Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime.
>
> When the evidence shows that a person acted as if he was conscious, the law presumes that he then was conscious. The presumption, however, is disputable and may be overcome or questioned by evidence to the contrary.
>
> If you find that the defendant committed an act, which, if he was conscious, would have constituted the crime charged against him or would have been an element of that crime, and, if you have a reasonable doubt whether the defendant was conscious at the time of such act, you should find that he was then unconscious."[23]

It cannot be said that the jury did not have the opportunity to find the defendant "not guilty" (by reason of not being conscious of the acts charged).

We have carefully examined the record in this appeal but fail to find merit in any of the other contentions raised by appellant.

Judgment affirmed.

McFADDEN, C. J., and McQUADE, SHEPARD, and SPEAR, JJ., concur.

---

22. Instruction No. 2 given by the trial court.

23. Instruction No. 14 given by the trial court.