No. 88-156

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

SCOTT CLYDE MAGRUDER,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Arthur J. Thompson; Thompson & Sessions, Billings,
Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Joe R. Roberts, Asst. Atty. General, Helena
Harold F. Hanser, County Attorney, Billings, Montana

---

Submitted on Briefs:  Sept. 1, 1988

Decided:  November 17, 1988

FILED

Filed: '88 AUG 17 AM 10 57

CLERK MONTANA SUPREME COURT

_Edd M. Harrison_

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This case arises out of the District Court for the Thirteenth Judicial District, Yellowstone County. Mr. Magruder was convicted of felony assault and mitigated deliberate homicide, in a jury trial. He appeals. We affirm.

The issues are:

1. Did the District Court err by allowing the testimony of the victim's daughter regarding the telephone call from Mr. Magruder to the victim?

2. Were Mr. Magruder's proximate cause instructions properly rejected?

Mr. Magruder and the victim had become acquainted through a woman over whom they had a continuing disagreement. On the evening of June 4, 1987, Mr. Magruder placed a telephone call to the victim. The victim's daughter, who originally answered the phone, testified at trial that her father seemed worried after the conversation and told her that he'd better be "packing a piece" because Mr. Magruder would be packing a piece and would be there later.

Two acquaintances of Mr. Magruder testified that they saw him driving his truck about 10 p.m. that evening. They both testified that Mr. Magruder's truck was weaving on the road and up onto the curb. The male acquaintance testified that after he offered to drive Mr. Magruder to a bar, Mr. Magruder pointed a gun at him from his truck and followed him for several blocks. The second acquaintance testified that she saw a gun pointed at them and that she feared Mr. Magruder would shoot them.

Several persons saw Mr. Magruder park his truck near the apartment where the victim and the woman lived. Mr. Magruder got out of his truck and attempted to buy cigarettes from one witness across the street. Mr. Magruder then got back into

his truck. As he did so, the victim drove up. The victim walked quickly to the driver's side of Mr. Magruder's truck, where he spoke with Mr. Magruder for a few minutes. Several witnesses heard a shot fired, after which Mr. Magruder drove away. The victim lay on the ground dying from a shotgun blast to his abdomen. He had a gun tucked in the waistband of his pants. Shortly thereafter, Mr. Magruder was arrested and his shotgun was recovered.

Mr. Magruder testified in his own behalf. He stated that the victim approached his truck and asked him to step out, then grabbed his shotgun and was shot in the ensuing struggle over the gun. The jury convicted Mr. Magruder of felony assault as to the two acquaintances who offered him a ride and of mitigated deliberate homicide as to the victim. This appeal involves only the mitigated deliberate homicide conviction.

I

Did the District Court err by allowing the testimony of the victim's daughter regarding the telephone call from Mr. Magruder to the victim?

The defense objects to the following testimony of the victim's daughter:

> Q. Tell us how your father appeared when the phone call ended, please.
> A. He appeared very worried, very upset.
> Q. Did your father tell you the substance of the telephone call?
> MR. ADAMS: Object again on the grounds it is hearsay.
> THE COURT: The objection is overruled.
> A. He told me that Scott had told him--
> Q. Just answer "yes or no" first. Did he tell you?
> A. Yes, he did.
> Q. And when did he do that?
> A. When he hung up the phone.

3

Q. So, right after the telephone call?
A. Yes, right after the telephone call.
Q. And he was very nervous and concerned?
A. He was very worried, yes.
Q. What did he tell you the phone call was about?
A. Well, I had to ask him a few times. And he told me that Scott, that he was under the impression that Tina was there with Scott, and he was, and he said that Scott told him that he wasn't trying to take his woman away from him, and that if there was any problems that they would settle their differences. And my dad said that he told him there was no problem. And he told him that he would be down later to settle their differences, and that he better be packing a piece because Scott was packing a piece.
Q. It was your first statement that Scott said he would be down to settle their differences, meaning Scott Magruder?
A. Yes.
Q. And that he, Scott Magruder would be packing a piece?
A. Yes.
Q. And that your father had better be packing one?
A. Yes.
Q. Did you father continue to seem worried?
A. Yes, he did.

The defense argues that the testimony about what the victim said and about what the victim said Mr. Magruder said is inadmissible hearsay. It asserts that the lower court erred in admitting this testimony.

Hearsay is a statement, not made by the declarant while testifying at the trial or hearing, which is offered in evidence to prove the truth of the matter asserted. Rule 801(c), M.R.Evid. Generally, hearsay is not admissible into evidence. Rule 802, M.R.Evid. However, a number of exceptions to this general rule are set forth in Rules 803 and 804, M.R.Evid. In review on appeal, determinations as to the admissibility of evidence will not be reversed unless the trial judge's ruling represents an abuse of discretion.

4

State v. Caryl (1975), 168 Mont. 414, 431, 543 P.2d 389, 398-99.

The District Court instructed the jury that the above testimony was

> not offered to prove the truth of the matter asserted, but rather to show the victim's then existing state of mind. You are to consider the statements only in regard to the victim's state of mind and for no other purpose.

The purpose set forth by the judge suggests that the testimony as to what the victim said would be admissible under the exception set forth at Rule 803(3), M.R.Evid.:

> Then-existing mental, emotional, or physical condition. A statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed.

The case which the dissent states parallels the facts here, United States v. Brown (D.C.Cir. 1974), 490 F.2d 758, differs from the present case in an important respect. In that case, the defendant raised no claim of self-defense. Brown, 490 F.2d at 780. The court in Brown acknowledged that such a defense would make a difference.

> The threshold requirement of admissibility of such hearsay statements of fear of defendant in homicide cases is some substantial degree of _relevance_ to a material issue in the case. While there are undoubtedly a number of possible situations in which such statements may be relevant, the courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant's claim of self-defense as justification for the killing. When such a defense is asserted, a defendant's assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely

5

that the deceased was in fact the aggressor in the
first instance.

Brown, 490 F.2d at 767. At the first omnibus hearing, Mr.
Magruder's attorney stated that self-defense would be raised.
At trial, defendant's testimony was that the shooting oc-
curred as the victim pulled on the muzzle of his gun. The
jury was instructed on self-defense. Brown thus provides
reasoning to allow the victim's statements into evidence in
the present case.

Under the District Court's instruction, the testimony
about what Mr. Magruder said to the victim was not offered to
prove its truthfulness (that Mr. Magruder really would be
carrying a gun), but only to show the victim's state of mind.
Under that instruction, then, the statement of Mr. Magruder
to the victim was not hearsay because it was not offered in
evidence to prove the truth of the matter asserted.

We hold that the District Court did not abuse its dis-
cretion in admitting the daughter's testimony for the purpose
of showing the victim's state of mind.

II

Were Mr. Magruder's proximate cause instructions proper-
ly rejected?

Mr. Magruder offered four jury instructions on proximate
causation. He argues that when the court refused to give
those instructions, he was deprived of the opportunity for
the jury to consider his theory that the victim's death was a
result of the victim's own negligence.

Proximate cause is not a term which is generally used in
criminal jury instructions under Montana's Criminal Code of
1973. The Criminal Law Commission Comment to § 45-2-201,
MCA, which defines "cause" for purposes of the criminal code,
states that problems created by concepts of proximate cause
"should be faced as problems of the culpability required for

6

conviction and not as problems of causation." The Court is not able to envision a case under our present criminal code in which a proximate cause instruction would be appropriate.

If the instructions given to the jury fully and fairly convey the elements of criminal homicide, this Court must consider that the jury has been properly instructed. State v. Collins (1978), 178 Mont. 36, 45, 582 P.2d 1179, 1184. Instruction No. 5 given in this case stated that each element of the offense must be proven beyond a reasonable doubt. That instruction also defined "act," "purposely," "knowingly," and "negligently." Instruction No. 10 set forth the statutory definitions of deliberate homicide, mitigated deliberate homicide, and negligent homicide. Instructions No. 12, 13, and 14 set forth the elements of deliberate, mitigated deliberate, and negligent homicide. Instruction No. 24 stated that the jury should first consider whether the elements of deliberate homicide had been proven. If not, they should consider whether mitigated deliberate homicide had been proven. Finally, if the elements of mitigated deliberate homicide had not been proven, the jury was to consider the issue of negligent homicide. Since the jury found Mr. Magruder guilty of mitigated deliberate homicide, it never reached consideration of negligent homicide.

We conclude that the instructions given the jury in this case fully and fairly conveyed the elements of criminal homicide. We hold that the refusal of Mr. Magruder's proposed instructions on proximate cause was not error.

Affirmed.

_____
Justice

We Concur:

7

_____
Chief Justice

John Conway Harrison
_____

_____

_____

_____

_____
Justices

8

Mr. Justice John C. Sheehy, dissenting:


I dissent from the approval of the hearsay statement which was admitted to evidence in this case.

The majority's handling of the hearsay problem skims too lightly over the very problematic nature of the testimony.

Professor Moore reports that when the federal counterpart of Rule 803(3) came before the House, it was approved under the following limitation:

> Rule 803(3) was approved in the form submitted by the court to Congress. However the Committee intends that the rule be construed to limit the doctrine of Mutual Life Insurance Company v. Hillmon (1892), 145 U.S. 285, 295-300, so as to render statements of intent by a declarant admissible only to prove his future conduct, not the future conduct of another person.

11 Moore's Federal Practice ¶ 803(3)[2] (2d ed. 1948) at VIII-80.

In Hillmon, the United States Supreme Court held letters from one Walters expressing intent to travel with Hillmon were admissible as circumstantial proof both that Walters went and that he went with Hillmon. The report of the House Committee indicates the intent of that Committee that the ruling of Hillmon was the limit of the bounds as far as admitting hearsay was concerned.

Like declarations purporting to show the victim's state of mind have been rejected. In United States v. Kaplan (2d Cir. 1974), 510 F.2d 606, a conviction for possession or sale of narcotics was reversed because the Drug Enforcement Agent was allowed to testify that a declarant out of court had spoken of the defendant as "his connection." Despite a careful instruction limiting this testimony to proof of the

9

agent's state of mind, the court of appeals held the declaration too prejudicial to be admitted.

In United States v. Brown (D.C. 1973), 490 F.2d 758, there are facts that parallel exactly what occurred in the case at bar. In Brown, the testimony by the wife of a murdered man that her husband had said he feared the defendant might kill him was held admissible under Rule 803(3) to prove the victim's state of mind, but excluded nonetheless as too prejudicial, under Rule 403.

The majority discounts the precedential authority of United States v. Brown, supra, pointing out that testimony of an oral statement such as this case concerns is admissible where the defendant relies on self-defense. Two facets of this case belie that distinction. First, Magruder did not rely on self-defense; rather, he based his defense upon accidental discharge of a firearm. Second, the facts strongly show that the victim himself was the aggressor in that he drove his vehicle next to Magruder's truck, and then, "packing a piece," he went to the driver's side of Magruder's vehicle. The only remaining testimony of what occurred there is from Magruder himself who stated that the victim grabbed his shotgun which was discharged in the ensuing struggle over the gun.

Now, it is also true that where the defense is that of accidental discharge, testimony of oral statements regarding the victim's state of mind are admissible, if the state of mind of the victim is an issue. United States v. Brown, 490 F.2d 758, 767. However, the question then becomes even if the evidence is relevant, should it not be refused because of the overwhelming prejudicial effect as against the defendant? The admissibility of these kinds of statements is one of the most vexing problems facing courts in these types of cases, and since both the majority here and this writer, in dissent,

10

rely on United States v. Brown, it is recommended to the reader that substantial study be given to the Brown case. In it, there is a rather elaborate dissection of the problems involved, and of their proper resolution. It is especially true in Brown that the court set out the reasons why a limiting instruction which tells the jury that the testimony can only be used to determine the state of mind of the victim is in most cases impossible to follow.

For example:

> Quite a number of courts have confronted facts similar to those here involving hearsay statements made by the victim of a homicide which inferentially implicate the defendant. Such statements by the victims often include previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant. While such statements are admittedly of some value in presenting to the jury a complete picture of all the facts and circumstances surrounding the homicide, it is generally agreed that their admissibility must be determined by a careful balancing of their probative value against their prejudicial effect. Courts have recognized that such statements are fraught with inherent dangers and require the imposition of rigid limitations. The principal danger is that the jury will consider the victim's statement of fear as somehow reflecting on defendant's state of mind rather than the victims--i.e. as a true indication of defendant's intentions, actions or culpability. Such inferences are highly improper and where there is a strong likelihood that they will be drawn by the jury, the danger of injurious prejudice is particularly evident. (Emphasis in original.)

490 F.2d at 765, 766.

It is on the point of exclusion even when the testimony is relevant, the court in United States v. Brown speaks out strongly:

11

> There are number of other cases which have allowed in testimony of this type on the basis of various errors in reasoning or simple lack of concern. One of the principal problems which brings this about is a court's understandable eagerness to find an "easy" rule, simple in operation. This leads to a tendency to adopt a mechanistic approach devoid of analysis. For example, in State v. Radabaugh, 93 Idaho 727, 471 P.2d 582 (1970), the Idaho Supreme Court, dealing with a hearsay declaration of fear on the part of the deceased victim, simply identified the statement as probative on the issue of the state of mind of the declarant, referred to the fact that a limiting instruction had been given and then pronounced it admissible in a conclusory and offhanded manner. Such a simplistic approach sidesteps any preliminary determination of relevance and does not begin to weigh the possible prejudice contained in such statements.

490 F.2d at 772.

The real problem with the approved testimony in this case is that under cover of showing the victim's state of mind, the testimony points instead to the victim's declaration of Magruder's state of mind. The daughter's testimony in this case was hearsay since she received it from the victim, and because what the victim reported to her was a further hearsay statement from Magruder, the entire testimony consisted of hearsay within hearsay. Under Rule 805, hearsay included within hearsay is not admissible unless each part of the combined statement conforms with the exceptions to the hearsay rule as provided in Rules of Evidence. Here, Scott Magruder's reported statement to the victim cannot be brought within any exception to the hearsay rule.

The extremely prejudicial effect of the testimony could not be cured by any instruction of the District Court to the jury. This is a case for the application of the "hot poker" rule, that is, that the effect of being rammed by a hot poker is not cured by the withdrawal of the poker. As Justice

12

Cardozo said in Shepard v. United States (1933), 290 U.S. 96, 104, 54 S.Ct. 22, 78 L.Ed. 196:

> . . . It will not do to say that the jury might accept the declarations for any light that they may cast upon the existence of a vital urge, and reject them to the extent that they charged the death to someone else. Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed . . .

I would hold the admission of the hearsay evidence in this case as reversible error, and remand for a new trial.

_____
                Justice

Mr. Justice William E. Hunt, Sr.:

I concur in the dissent of Mr. Justice Sheehy.

_____
                Justice

13