MR. JUSTICE SHEEHY,
dissenting:
I dissent from the approval of the hearsay statement which was admitted to evidence in this case.
The majority’s handling of the hearsay problem skims too lightly over the very problematic nature of the testimony.
Professor Moore reports that when the federal counterpart of Rule 803(3) came before the House, it was approved under the following limitation:
“Rule 803(3) was approved in the form submitted by the court to Congress. However, the Committee intends that the rule be construed to limit the doctrine of Mutual Life Insurance Company v. Hillmon (1892), 145 U.S. 285, 295-300 [12 S.Ct. 909, 912-914, 36 L.Ed. 706,] so as to render statements of intent by a declarant admissible only to prove his future conduct, not the future conduct of another person.”
11 Moore’s Federal Practice paragraph 803(3)[2] (2d ed. 1948) at VIII-80.
In Hillmon, the United States Supreme Court held letters from one Walters expressing intent to travel with Hillmon were admissible as circumstantial proof both that Walters went and that he went with Hillmon. The report of the House Committee indicates the intent of that Committee that the ruling of Hillmon was the limit of the bounds as far as admitting hearsay was concerned.
Like declarations purporting to show the victim’s state of mind have been rejected. In United States v. Kaplan (2d Cir. 1974), 510 F.2d 606, a conviction for possession or sale of narcotics was reversed because the Drug Enforcement Agent was allowed to testify that a declarant out of court had spoken of the defendant as “his connection.” Despite a careful instruction limiting this testimony to proof of the agent’s state of mind, the court of appeals held the declaration too prejudicial to be admitted.
In United States v. Brown (D.C. Cir. 1973), 490 F.2d 758, there are facts that parallel exactly what occurred in the case at bar. In Brown, the testimony by the wife of a murdered man that her hus *499 band had said he feared the defendant might kill him was held admissible under Rule 803(3) to prove the victim’s state of mind, but excluded nonetheless as too prejudicial, under Rule 403.
The majority discounts the precedential authority of United States v. Brown, supra, pointing out that testimony of an oral statement such as this case concerns is admissible where the defendant relies on self-defense. Two facets of this case belie that distinction. First, Magruder did not rely on self-defense; rather, he based his defense upon accidental discharge of a firearm. Second, the facts strongly show that the victim himself was the aggressor in that he drove his vehicle next to Magruder’s truck, and then, “packing a piece,” he went to the driver’s side of Magruder’s vehicle. The only remaining testimony of what occurred there is from Magruder himself who stated that the victim grabbed his shotgun which was discharged in the ensuing struggle over the gun.
Now, it is also true that where the defense is that of accidental discharge, testimony of oral statements regarding the victim’s state of mind are admissible, if the state of mind of the victim is an issue. United States v. Brown, 490 F.2d 758, 767. However, the question then becomes even if the evidence is relevant, should it not be refused because of the overwhelming prejudicial effect as against the defendant? The admissibility of these kinds of statements is one of the most vexing problems facing courts in these types of cases, and since both the majority here and this writer, in dissent, rely on United States v. Brown, it is recommended to the reader that substantial study be given to the Brown case. In it, there is a rather elaborate dissection of the problems involved, and of their proper resolution. It is especially true in Brown that the court set out the reasons why a limiting instruction which tells the jury that the testimony can only be used to determine the state of mind of the victim is in most cases impossible to follow.
For example:
“Quite a number of courts have confronted facts similar to those here involving hearsay statements made by the victim of a homicide which inferentially implicate the defendant. Such statements by the victim often include previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant. While such statements are admittedly of some value in presenting to the jury a complete picture of all the facts and circumstances surrounding the homicide, it is generally agreed that their admissibility *500 must be determined by a careful balancing of their probative value against their prejudicial effect. Courts have recognized that such statements are fraught with inherent dangers and require the imposition of rigid limitations. The principal danger is that the jury will consider the victim’s statement of fear as somehow reflecting on defendant’s state of mind rather than the victim’s — i.e. as a true indication of defendant’s intentions, actions or culpability. Such inferences are highly improper and where there is a strong likelihood that they will be drawn by the jury, the danger of injurious prejudice is particularly evident. (Emphasis in original).”
490 F.2d at 765, 766.
It is on this point of exclusion even when the testimony is relevant, the court in United States v. Brown speaks out strongly:
“There are a number of other cases which have allowed in testimony of this type on the basis of various errors in reasoning or simple lack of concern. One of the principal problems which brings this about is a court’s understandable eagerness to find an ‘easy’ rule, simple in operation. This leads to a tendency to adopt a mechanistic approach devoid of analysis. For example, in State v. Radabaugh, 93 Idaho 727, 471 P.2d 582 (1970), the Idaho Supreme Court, dealing with a hearsay declaration of fear on the part of the deceased victim, simply identified the statement as probative on the issue of the state of mind of the declarant, referred to the fact that a limiting instruction had been given and then pronounced it admissible in a conclusory and offhanded manner. Such a simplistic approach sidesteps any preliminary determination of relevance and does not begin to weigh the possible prejudice contained in such statements.”
490 F.2d at 772.
The real problem with the approved testimony in this case is that under cover of showing the victim’s state of mind, the testimony points instead to the victim’s declaration of Magruder’s state of mind. The daughter’s testimony in this case was hearsay since she received it from the victim, and because what the victim reported to her was a further hearsay statement from Magruder, the entire testimony consisted of hearsay within hearsay. Under Rule 805, hearsay included within hearsay is not admissible unless each part of the combined statement conforms with the exceptions to the hearsay rule as provided in Rules of Evidence. Here, Scott Magruder’s reported statement to the victim cannot be brought within any exception to the hearsay rule.
The extremely prejudicial effect of the testimony could not be *501 cured by any instruction of the District Court to the jury. This is a case for the application of the “hot poker” rule, that is, that the effect of being rammed by a hot poker is not cured by the withdrawal of the poker. As Justice Cardozo said in Shepard v. United States (1933), 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196:
“. . .It will not do to say that the jury might accept the declarations for any light that they may cast upon the existence of a vital urge, and reject them to the extent that they charged the death to someone else. Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed . . .”
I would hold the admission of the hearsay evidence in this case as reversible error, and remand for a new trial.
MR. JUSTICE HUNT concurs in the dissent of MR. JUSTICE SHEEHY.