546 P.2d 1180

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Jean GOODRICH, a/k/a Jeannie Goodrich, Defendant-Appellant.**

**No. 11722.**

Supreme Court of Idaho.

March 3, 1976.

**474**

Thomas C. Frost of Green, Frost & Cantrill, Boise, Michael F. Heyrend, Salt Lake City, Utah, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McQUADE, Chief Justice.

Defendant-appellant Jean Goodrich, (hereinafter appellant), was charged with murder in the second degree (I.C. § 18–4003) arising out of the fatal shooting of her ex-husband Brent Goodrich. The shooting occurred during the early morning hours of October 17, 1973, at approximately 12:30 a. m. at appellant's home in the city of Pocatello. A jury found appellant guilty as charged, and a judgment of conviction was entered. Appellant's motions to dismiss and for a new trial were denied. She was sentenced by the trial judge to life imprisonment at hard labor, after a pre-sentence investigation was ordered and received, and after a mitigation hearing was held. Appellant appeals from the judgment which was entered, and from the denial of her motions to dismiss and for a new trial. We reverse the judgment of conviction, and remand for further proceedings in conformity with this opinion.

The facts of this shooting incident have their origin in October of 1963, when appellant first met the deceased. At that time appellant was divorced and had three children from a previous marriage. Appellant married the deceased in June of 1964. In 1966, the deceased adopted appellant's three children. Appellant and the deceased were divorced in 1969.

The record discloses that appellant and the deceased lived together on and off for some time after the divorce decree was entered. In December of 1970, appellant and the deceased remarried. The second marriage lasted until February of 1973, when the parties were divorced for a second time.

There is a dispute in the record as to the nature of the relationship that existed between appellant and the deceased. Appellant's version is that although her relationship with the deceased was not without its strain and friction, there were deep bonds of love and affection between the two. The state introduced witnesses who contradicted this, and who testified that appellant was obsessed with the idea of killing the

deceased—either out of jealousy over his relationship with another woman or from desire to gain the proceeds on insurance policies that he carried.

In August of 1973, appellant married Blaine Bolles. From the accounts of both parties, the relationship was stormy from the outset. Appellant testified that Bolles repeatedly threatened her as well as the deceased with physical violence, struck her on numerous occasions, and that as a result of his behavior she was in terrible fear of him. She further testifed that Bolles' actions caused her to call the police in late August of 1973 to remove him from her house on Sublette Avenue in the city of Pocatello which Bolles had moved into at the time of the marriage. Bolles disputed much of appellant's testimony. He agreed that there had been difficulty between appellant and himself during their marriage, but testified that he had never threatened the life of appellant, and on only one occasion "to blow off a little bit of steam" had he threatened to kill the deceased. He did admit to slapping appellant and placing his hands around her neck on one occasion, but stated he did this when he discovered her in the arms of another man while sitting in a car in a parking lot. Appellant and Bolles separated on August 30, 1973, and were divorced on September 27, 1973.

The record discloses that appellant spoke to the chief of detectives of the police department for the city of Pocatello sometime in the middle of September, 1973, (during the time she was separated from Bolles, but prior to the time of her divorce from him), inquiring about the possibility of obtaining a gun for her own protection against Bolles. A few weeks after this talk, and apparently with the approval of the deceased, appellant obtained a .25 caliber semi-automatic pistol, and a box of shells. On or about October 6, 1973, the deceased moved in with appellant and her three children in her new residence at 600 Highland Drive in the city of Pocatello. He continued to reside with appellant and her children up until the time of the fatal shooting.

The fatal shooting occurred in the early morning hours of October 17, 1973. After retiring for the evening at about 10:30 p.m. on the night of October 16th, appellant testified that she was awakened by what she described as a loud ponding noise in the pipes. After reaching over and finding that the deceased was not in bed beside her, she became frightened. According to her own account, she picked up the gun (which it was her habit to place beside her bed), and without thinking to take her glasses (which she wore all the time to correct a nearsighted condition), arose and proceeded down the hallway to the dining room from where she believed the sound to be coming. She testified that she did not turn on any lights as she proceeded because she was too frightened to think to do so. She then related that she saw a figure standing there, who, in her terrified state she believed to be Bolles. At that moment she shot the deceased several times. At that time the deceased was clad only in undershorts and was apparently drinking a glass of water.

Within moments of the shooting, the children awoke to find their mother (appellant) screaming and hysterical. An ambulance was summoned, and the police were called. The deceased was taken to a nearby hospital, where he died a few days later. Appellant was charged with the commission of murder in the second degree.

Appellant raises several issues on appeal. One issue involves the admissibility of certain testimony which appellant contends was improperly allowed into evidence over her repeated objection. We agree with this argument, and reverse and remand for a new trial on this ground.

The testimony in issue was elicited by the prosecuting attorney from Mrs. Reva Hill, a female acquaintance whom the deceased began dating on a regular basis in July of 1973, while he was divorced from

**476**

appellant. The contested testimony consisted of statements allegedly made by the deceased to Mrs. Hill concerning appellant. Although appellant voiced numerous objections on hearsay and other grounds, Mrs. Hill was allowed to relate the following as told to her by the deceased:

1) that appellant shot at the deceased with a shotgun on a prior occasion, (which the record discloses occurred five and one-half years before the fatal shooting incident in question);

2) that appellant had threatened to kill the deceased and Mrs. Hill, as well as herself, after appellant had a fight with the deceased on September 10, 1973;

3) that appellant attacked a woman with whom the deceased was dancing at a party in August of 1973;

4) that appellant caused a fight at a bar which resulted in the deceased and a friend getting badly beaten.

This testimony [1] was allowed into evidence by the trial judge, without a limiting or cautionary instruction to the jury, on the ground that it came within the holding of *State v. Radabaugh.*[2] A review of the holding of that case convinces us that the trial judge was in error in permitting this testimony into evidence without a limiting instruction.

In *Radabaugh,* this Court was asked to determine whether the following two statements made by the deceased to a third party about the defendant were properly admitted into evidence by the trial judge:

1) "I'm scared to death of him [defendant] not so bad when he's drinking beer, but when he's drinking whiskey he's crazier than a tick."

2) ". . . he [defendant] might as well get his stuff and go back to skid row where he came from, because she was closing the hotel and moving to Texas with her son."

The Court found the first statement to be a declaration offered to show the state of mind of the declarant, i. e., the deceased victim, and ruled it admissible since

"[e]vidence tending to show the mental state of the victim and ill-feeling or hostility between decedent and defendant is admissible." [3]

Thus the Court concluded that no error was committed in allowing the first statement into evidence, because the testimony was probative of the attitudes and feelings, i. e., fear of the victim—declarant towards the defendant, and any improper use of the declaration by the members of the jury was avoided by the tendering of a limiting instruction by the trial judge.[4]

The Court next addressed itself to the admissibility of the second statement, and commented:

"[T]he second statement was offered to show motive on the part of Radabaugh [defendant] and is properly admissible since Radabaugh admitted that he had been notified that the hotel was to be closed and that the two ladies were moving back to Texas. When it is proved that "D" (murder victim) made a statement to "X" (the defendant-appellant, Radabaugh), with the purpose of showing circumstantially, the probable state of mind of "X" (the defendant-appellant, Radabaugh), such as notice, knowledge or *motive* or to show information which "X" had as bearing on the subsequent conduct of "X" (defendant-appellant,

---

1. Mrs. Hill was also allowed to testify that the deceased told her ". . . that he didn't think she [appellant] ever had—now, this is his words, not mine, that she ever had passed a 7th grade education from the way she acted, and she didn't act like a lady, she had no morals—" On appellant's motion, this testimony was stricken from the record. The trial judge instructed the jury to disregard this testimony.

2. 93 Idaho 727, 471 P.2d 582 (1970).

3. *Id.* at 731, 471 P.2d at 586.

4. The trial judge instructed the jury that the first statement could not be considered for the truth of the matter asserted therein, but could only be considered to evaluate the state of mind of the declarant-victim at the time of the fatal incident.

Radabaugh), the evidence is not subject to attack as hearsay. McCormick, Evidence, § 228, p. 464 (1954)"[5] (emphasis in original)

Since the *Radabaugh* jury was again notified of the limited purpose for which they were to consider this testimony, the second statement was also deemed to have been correctly admitted into evidence.

The state argues that the statements made by Brent Goodrich, the deceased, to Mrs. Hill and related by her at trial, fall within the categories of admissible declarations outlined in *Radabaugh,* because they reflect a state of mind of the declarant-victim showing fear and hostility, and also reflect on the existence of motive. In the state's view, Mrs. Hill's testimony emphasized the fear, hostility and ill-will which existed between appellant and the deceased, and evidenced the presence of a motive for the fatal shooting which contradicted appellant's justifiable homicide theory. Thus it is the state's position that the testimony was admissible because it came within the evidentiary confines of the *Radabaugh* decision. We do not agree with this argument.

 *Radabaugh* recognized that a statement offered to show the state of mind of declarant-victim, may be admissible under the "state of mind" exception to the hearsay rule,[6] where the declarant-victim's state of mind is relevant to an issue involved in the criminal proceedings.[7] As with the admissibility of any piece of evidence, where the probative value of the statement is substantially outweighed by the danger of unfair prejudice to the defendant, this evidence should be excluded. As noted by one court:

"Quite a number of courts have confronted facts similar to those here involving hearsay statements made by the victim of a homicide which inferentially implicate the defendant. Such statements by the victims often include previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant. While such statecents [sic] are admittedly of some value in presenting to the jury a complete picture of all the facts and circumstances surrounding the homicide, it is generally agreed that their admissibility must be determined by the careful balancing of their probative value against their prejudicial effect. Courts have recognized that such statements are fraught with inherent dangers and require the imposition of rigid limitations. The principal danger is that the jury will consider the victim's statement of fear as somehow reflecting on *defendant's* state of mind rather than the victim's—i. e., as a true indication of defendant's intentions, ac-

5. *State v. Radabaugh, supra* note 2, 93 Idaho at 731, 471 P.2d at 586.

6. *See* McCormick on Evidence § 294 at 694 (2nd ed. 1972); VI Wigmore on Evidence § 1714 *et seq.* (3rd ed. 1940); Bell, Handbook of Evidence for the Idaho Lawyer at 136 (2nd ed. 1972).

7. Other states have found that a statement of fear of the defendant, made by the deceased-victim to a third party, is relevant in a homicide case in the following instances: (a) when the defendant claims self-defense as justification for the killing. Where this defense is asserted, a defendant's contention that the deceased attacked him first, may be rebutted by extra-judicial declarations of the victim that he was afraid of the defendant, thus rendering it unlikely that the deceased was the aggressor in the first instance. *See People v. Schindler*, 273 Cal.App.2d 624, 78 Cal.Rptr. 633 (1969). (b) when the defendant seeks to build his defense around the fact that the deceased committed suicide. Evidence introduced which tends to demonstrate that the victim made statements inconsistent with a design to take his or her own life are relevant. *See Commonwealth v. Del-Valle*, 351 Mass. 489, 221 N.E.2d 922 (1966). (c) when the defendant claims the killing was accidental. *See People v. Lew*, 68 Cal.2d 774, 69 Cal.Rptr. 102, 441 P.2d 942 (1968). (d) when a specific "mens rea" is in issue, e. g., was the killing premeditated ·or not? *See People v. Hamilton*, 55 Cal.2d 881, 13 Cal. Rptr. 649, 362 P.2d 473 (1961); overruled on other grounds, *People v. Wilson*, 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22 (1969).

tions, or culpability. Such inferences are highly improper and where there is a strong likelihood that they will be drawn by the jury the danger of injurious prejudice is particularly evident." [8] (Emphasis in original.)

Once it has been determined that the statement is relevant to an issue in the proceedings, and that its admissibility into evidence will not unfairly prejudice the defendant, the statement can be admitted, provided a cautionary instruction is given to the jury as to the limited purpose for which this testimony may be utilized, i. e., the jury must be instructed that its consideration of the statement is confined to whatever probative value it has on the issue of the declarant-victim's state of mind, and not as to the truthfulness of the matters stated therein:

"A statement which would be pure hearsay as to the truth of the matters alleged is not made inadmissible thereby if introduced solely to show the declarant's state of mind and if accompanied by a limiting instruction. This represents a basic policy judgment that the possibility of misuse of the evidence for the impermissible purpose, when minimized by a limiting instruction, is a risk worth chancing when compared to the harms that would likely result from the total exclusion of valuable relevant evidence." [9]

■ *Radabaugh* also recognized that evidence of a statement made by a declarant-victim to the defendant may be admissible into evidence for the purpose of demonstrating circumstantially the effect the utterance had upon the defendant as it may bear upon his motive for a crime. As noted by McCormick in his treatise on the law of evidence:

"*Utterances and writings offered to show effect on hearer or reader.* When it is proved that D [declarant-victim]

made a statement to X, [defendant] with the purpose of showing, the probable state of mind thereby induced in X, [defendant] such as being put on notice, or having knowledge, or motive, or to show the information which X [defendant] had as bearing on the reasonableness or good faith of the subsequent conduct of X, [defendant] or anxiety, the evidence is not subject to attack as hearsay." [10]

■ It is readily apparent that the testimony in issue is not admissible under the second category of statements recognized to be allowable into evidence in *Radabaugh*. In *Radabaugh,* it was shown that one of the victims made a statement to the *defendant* (which he admitted he had heard), to the effect that the hotel was to be closed and the owners planned to move to Texas. The Court correctly found that this statement could be introduced into evidence to show circumstantially the motive of the defendant for the homicide. In this case, the trial court had before it statements made by the victim to the witness, Mrs. Hill, outside the presence of the appellant. These statements were therefore inadmissible.

■ Nor do we believe that the contested testimony is admissible under the first category of statements before the Court in *Radabaugh*. The admission of the evidence in issue was not accompanied by any instruction to the jury (either at the time the testimony was first introduced, or at the time when jury instructions were read by the trial judge), that Mrs. Hill's testimony was introduced solely to show the deceased's state of mind at the time of the fatal incident. A limiting instruction is an absolutely necessary preventative measure, which must be given by the trial judge, to insure that the jury's consideration of the statement is confined to whatever probative value the statement has on the issue of the declarant-victim's state

8. *United States v. Brown*, 160 U.S.App.D.C. 190, 490 F.2d 758, 765–66 (1974).

9. *Id.* at 763.

10. McCormick on Evidence, *supra* note 6, § 249 at 589–90.

of mind. Failure to so instruct the jury, allows the jurors to consider the statement for the truth of the factual matters related therein. This not only defeats the purpose of this narrow exception to the hearsay rule, but is unduly prejudicial to an accused's right to a fair trial.

To safeguard against unfair prejudice to a defendant in a criminal proceeding, where a statement of a declarant-victim is introduced into evidence under the "state of mind" exception to the hearsay rule, a limiting instruction is required at the time the testimony is introduced, if requested, and also in the final instructions. The initial burden rests upon defense counsel to make his objection known to the trial judge of the unlimited use of this "state of mind" testimony. The admission of Mrs. Hill's testimony was error, necessitating a reversal of the judgment of conviction that was entered, and requiring a remand for a new trial.

Appellant contends that error was committed by the trial judge in submitting to the jury instructions dealing with transferred intent, malice, and justification and in refusing to allow her counsel an opportunity to make objections to these proposed instructions a part of the record. Because we have reversed on other grounds we find it unnecessary at this time to decide whether the instructions were erroneous. However, we believe that in accordance with I.C.R. 30,[11] counsel must be permitted by the trial court to make his objections and the grounds for the objections to proposed jury instructions known for the record.. An opportunity must be extended to counsel at some stage in the proceedings, prior to the time the jury is charged, to voice objections so as to preserve them for possible review upon appeal, and those proceedings must be made a part of the record.[12]

Appellant next contends that the trial judge denied her the right of allocution provided under I.C.R. 32(a). I.C.R. 32(a) provides in pertinent part:

> "*Sentence and judgment.*—(a) SENTENCE. . . . Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally to ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. . . . "

Appellant maintains that neither at the mitigation hearing nor at sentencing was she given the opportunity to speak in her own behalf. Assuming *arguendo,* appellant is correct in this assertion, the failure by the trial judge to afford her the right is not grounds for reversing the judgment of conviction.[13] Where such an omission occurs, the proper corrective action is to remand to permit resentencing after appellant is granted the right to speak.[14]

---

11. I.C.R. 30 provides:

"*Instructions.*—At the close of the evidence or at such earlier time as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the request. At the same time copies of such requested instructions shall be furnished to adverse parties. The court shall inform counsel of its proposed actions upon the requested instructions and shall allow counsel a reasonable time within which to examine and make objections outside the presence of the jury to such instructions or the failure to give requested instructions. Such objections shall state distinctly the matter to which he objects and the grounds of his objections, which objections shall be made a part of the record. No party may assign as error any portion of the change [sic] or omission therefrom unless he objects thereto prior to the time that the jury is changed. [sic] The court shall instruct the jury prior to final argument."

12. I.C. § 1–1103. *See Annau v. Schutte,* 96 Idaho 704, 535 P.2d 1095 (1975).

13. *Warren v. Richardson,* 333 F.2d 781 (9th Cir. 1964. *See* annotation entitled "Necessity and sufficiency of question to defendant as to whether he has anything to say why sentence should not be pronounced against him;" 96 A.L.R.2d 1292, § 6 (1964).

14. *Van Hook v. U. S.,* 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961); *Grabina v.*

**480**

■ To avoid problems with regard to the right of a defendant under I.C.R. 32(a), a trial judge before sentencing must directly address the defendant, and offer him personally a clear opportunity to make a statement in his own behalf, and to present any information in mitigation of punishment. Affording only the defendant's counsel the right to speak on the accused's behalf does not constitute compliance with this rule.

Appellant's other assignments of errors are either unmeritorious, or can be corrected at a new trial.

The judgment of conviction is reversed, and the cause is remanded for a new trial.

McFADDEN, DONALDSON, SHEPARD, and BAKES, JJ., concur.

United States, 369 U.S. 426, 82 S.Ct. 880, 8 L.Ed.2d 7 (1962) ; United States v. Gardner, 480 F.2d 929 (10th Cir. 1973), cert. den. 414 U.S. 977, 94 S.Ct. 297, 38 L.Ed.2d 220

BAKES, Justice (concurring specially) :

The rule announced in State v. Radabaugh, 93 Idaho 727, 471 P.2d 582 (1970), which permits a witness to testify concerning conversations with the deceased outside the presence of the defendant is an intrusion on the right to confrontation guaranteed by the Sixth Amendment of the United . States Constitution, as announced in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), and Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d 213 (1970). Even if those statements are limited to direct evidence of the state of mind of the deceased, where that issue is relevant in the case (see footnote 7 of the majority opinion), they may not survive the broad sweep of the Sixth Amendment's guarantee.

(1973) ; United States v. Eads, 480 F.2d 131 (5th Cir. 1973) ; Wright, Federal Practice and Procedure: Criminal § 525 at 404 (1969).