673 P.2d 438

**STATE of Idaho, Plaintiff-Respondent,**
**v.**
**Danny Dean MILLER,**
**Defendant-Appellant.**

**No. 14372.**

Court of Appeals of Idaho.

Dec. 8, 1983.

Douglas R. Whipple, Burley, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

For most of the twentieth century, our correctional system in Idaho has been anchored upon the concept of indeterminate sentencing. However, in 1977 our Legislature embarked upon a new course, authorizing district judges to choose fixed term sentences as alternatives to indeterminate sentences. I.C. § 19–2513A. Today we encounter a case that requires us to determine whether a fixed sentence is excessive.

Danny Dean Miller shot and killed a young woman with whom he was intimately acquainted. They had driven a car to a place near the Snake River in Minidoka County. Miller later told the police:

[We were] going to make love . . . but I was rendered impotent by all the speed I took. . . . She began to taunt me. . . . I couldn't take any more and I went for the gun I kept under the seat. . . . Everything started going slowly, as if I was under water. I came up with the gun and [she] pushed me and the gun discharged out of the drivers [sic] window. Then a rage as I've never known before. She jumped out of the passenger door. . . . I usually carried an extra shell and began reloading as I ran or tried to run after her. The gun was in my right hand with the left wrapped around my right wrist. I stopped short when the gun touched her head and I fired.

Miller was charged with first degree murder. He pled not guilty. Under the law in effect at the time, he filed a notice of intent to rely upon a defense of mental illness. However, a psychiatric evaluation produced a finding that he did not suffer from any major mental illness or mental defect. Plea negotiations ensued. The state amended its charge to second degree murder, and Miller pled guilty. The district court sentenced him to a fixed term of twenty-five years in custody of the Board of Correction. He has appealed the sentence. We affirm.

I

The general standards of sentence review are well settled. The Idaho Supreme Court has held that if a sentence is within the statutory maximum, it will not be disturbed on appeal unless the appellant affirmatively shows a clear abuse of discretion. *E.g., State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979). Idaho Code § 18–4004 provides that the maximum punishment for second degree murder is "imprisonment for life." The sentence in this case is well within the statutory maximum. Consequently, we must decide whether a clear abuse of sentencing discretion has been affirmatively shown.

A sentence may represent a clear abuse of discretion if it is shown to be unreasonable upon the facts of the case. *E.g., State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). In *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we said "reasonableness" implies that a term of confinement should be tailored to the purposes for which the sentence is imposed. We held that a sentence will be deemed excessive only if the appellant shows that, under any reasonable view of the facts, the term of confinement is longer than appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution. We noted that such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

■ In applying the *Toohill* standard, we first must identify the term of confinement imposed by the sentence under review. A fixed sentence, unlike an indeterminate sentence, must be served entirely in confinement. Parole is not available. *See State v. Rawson*, 100 Idaho 308, 597 P.2d 31 (1979). The duration of this confinement depends in part upon an inmate's conduct while he is in custody. Idaho Code § 20–101A authorizes "good conduct reduction of sentences."

[A person sentenced] for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subject to punishment, is entitled to a deduction from the term of his sentence beginning with the day on which the sentence starts to run. . . .

The statute lists several reduction formulas, according to the length of sentence imposed. Where, as here, the sentence is ten years or more, an inmate may receive a reduction of ten days for each month served.

There are further incentives and penalties in the good conduct system. Section 20–101A provides that an additional reduction, not exceeding five days per month, may be awarded on a discretionary basis to "inmates doing an outstanding job." On the other hand, § 20–101B provides that inmates who fail to observe faithfully the rules of the institution may have their good conduct reductions withheld or forfeited. Thus, good conduct reductions are not automatic in every case, but the formula reductions prescribed by § 20–101A are available as a matter of right to inmates motivated to achieve them.

■ In *Toohill* we said that the "practical implications" of a sentence should be considered in measuring the duration of confinement. 103 Idaho at 569, 650 P.2d at 711. *See also State v. Nice, supra.* Accordingly, for the purpose of sentence review, we will deem the duration of confinement imposed by a fixed sentence to be the term of the sentence less the formula reduction available as a matter of right for good conduct under I.C. § 20–101A.

II

We now apply the foregoing standards to the present case. Miller's fixed sentence is for a term of twenty-five years. If he earns the formula reduction for good conduct, the actual duration of his confinement will be approximately two-thirds of the sentence imposed. Thus, the precise question facing us is whether confinement for this period of time appears, under any reasonable view of the facts, to be longer than necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution.

■ When selecting the sentence imposed, the district judge explained his reasons in open court. He noted that Miller, who was then twenty-four years old, had established a pattern of using illegal and dangerous drugs such as amphetamines and LSD. Although Miller's past criminal record consisted only of a juvenile status offense, several traffic offenses, and a misdemeanor conviction for possession of marijuana, his conduct might have resulted in felony charges had he been apprehended for drug-related offenses.

The judge also noted that Miller had a history of "slight mental illness," which in the past had resulted in self-commitment to State Hospital South and in chaplain counselling while Miller was in the United States Army. The presentence investigation report indicated that Miller had received several nonjudicial punishments during his military service. The judge observed that Miller's behavioral problems did not reveal a "remedial fault" and that it would be "hard to come to grips with" rehabilitation in this case.

The court also focused upon the offense committed. The judge stated that if the case had gone before a jury on a first degree murder charge, it might have resulted in Miller facing the death penalty. He described the crime as unprovoked, saying that the victim might have been "somewhat insensitive and rude," but that she was "to-

tally innocent of anything that would justify" the crime.

In our view, the judge's comments reflected an appropriate concern about both the offender and the offense. He did not merely sentence the crime. His comments directly invoked the sentencing objectives of retribution and rehabilitation. They also reflected a general concern about protecting society.

We believe the fixed sentence was appropriately tailored to the purposes suggested by the district judge. The shocking and serious nature of the crime demonstrated that society is in need of extended protection from Miller's conduct. The intentional, senseless killing justified long-term confinement in retribution for the irretrievable loss that Miller had caused. Finally, Miller's history of behavioral and drug-related problems showed that rehabilitation would be a problematic task. We conclude that Miller has not shown, upon any reasonable view of the facts, that the sentence imposed here was excessive.

### III

Miller's brief ably argues that the sentence in this case is more severe than the penalties upheld in other recently reported second-degree murder cases. Such other cases to date have presented indeterminate sentences for review. *E.g., State v. Jenkins,* 105 Idaho 166, 667 P.2d 269 (Ct.App. 1983); *State v. Pettit,* 104 Idaho 601, 661 P.2d 767 (Ct.App.1983); *State v. Wilde,* 104 Idaho 461, 660 P.2d 73 (Ct.App.1983). *See also State v. Fuchs,* 100 Idaho 341, 597 P.2d 227 (1979). We acknowledge that parole in those cases might result in earlier release from confinement than will be available to Miller under his sentence.

However, as the district court observed, a jury might have viewed this case as a first degree murder. Moreover, our affirmance of sentences in other cases does not necessarily signify that we considered those sentences adequate in the cases where they were imposed. We were not asked to review those sentences for adequacy; we were asked to review them for excessive-

ness. We held that they were not excessive.

An intentional killing takes from the victim what an offender never can restore—the fragile gift of life. It is the final betrayal of another human being and the ultimate affront to civility. Our courts have no deeper obligation than to express society's condemnation of this act. A fixed sentence—like the one imposed here—represents a heightened level of judicial response to the unlawful use of deadly force. It is a tool to be used with care and restraint. We find that its use was appropriate in this case.

The sentence imposed by the district court is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.