767 P.2d 282

**In the Matter of the Application of Gilbert CHAPA, for Writ of Habeas Corpus to Inquire Into the Cause of Detention of Gilbert Chapa.**

**Gilbert CHAPA, Petitioner–Appellant,**

**v.**

**STATE of Idaho, Respondent.**

**No. 17093.**

Court of Appeals of Idaho.

Jan. 6, 1989.

Raymundo G. Pena, Rupert, for petitioner-appellant.

Jim Jones, Atty. Gen., Peter C. Erbland, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

This is an appeal from an order denying a petition for a writ of habeas corpus. The petition was filed by Gilbert Chapa to test the procedure by which he had been returned to custody following his escape from prison. Contending the district court erred in refusing to grant habeas corpus relief, Chapa presents the following arguments. First, he submits that he was taken into custody under a bench warrant issued by the sentencing court when that court no longer had jurisdiction over him. Second, he asserts that he was denied procedural rights accorded by statute, I.C. § 19-4510, to fugitives from justice. Final-

ly, he maintains that the district court erred in returning him to the custody of officials at the Idaho State Correctional Institution (ISCI), because his sentences at the ISCI had been fully served. We affirm the district court's order denying Chapa's petition.

As background for this case, it appears that in 1975 Chapa was convicted of first degree burglary, of attempted robbery and of assault with a deadly weapon, in the district court for Minidoka County. For these offenses, Chapa received concurrent indeterminate sentences totaling fifteen years. In 1982, Chapa was paroled but, upon a subsequent conviction for grand theft, he was returned to prison in 1983. Chapa was transferred from the ISCI to the Oregon State Penitentiary in 1984 pursuant to the Interstate Corrections Compact. I.C. §§ 20-701 to -704. Chapa escaped from the Oregon penitentiary in 1985. Upon his recapture in Utah, Chapa was extradited to Ada County to face an escape charge. However, Chapa avers that at a preliminary hearing the escape charge against him was dismissed, and that he was told by the presiding magistrate that he was "free to go." For reasons undisclosed in the record before us, Chapa was not reincarcerated.[1]

In 1987, at the request of the Minidoka County prosecutor, the district court for that county issued a bench warrant for Chapa's arrest as a fugitive from justice. The bench warrant was based upon an affidavit made by the records manager at the ISCI, which stated that Chapa had not finished serving his sentences, due to his escape in Oregon. The bench warrant stated that Chapa was subject to arrest pursuant to I.C. § 19-2602 for probation violation, and by authority of the Interstate Corrections Compact. Chapa was subsequently located in Colorado and, following a requisition warrant issued by the Governor of Idaho, Chapa was extradited and returned to Minidoka County. I.C. § 19-4522. Upon his return, Chapa moved to dismiss

---

1. *The* preliminary hearing proceeding in Ada County was not made part of the record on this appeal.

the court's bench warrant, and also filed a petition for a writ of habeas corpus, alleging that the district court was without jurisdiction to arrest him. Both the motion to dismiss and Chapa's petition for a writ of habeas corpus were denied. The district court ordered Chapa transferred to the ISCI to complete his sentences. This appeal followed. The appeal raises issues of law over which we exercise free review.

## I

■ Chapa first argues that the district court was without jurisdiction to issue a bench warrant for his arrest as a fugitive. Chapa submits that the district court lost its jurisdiction to issue the bench warrant 120 days after the original judgment against him had been entered in 1975.[2]

■ We disagree. The court's jurisdiction to issue such a warrant did not emanate from the court's prior involvement with Chapa's conviction and sentence to the custody of the board of correction. Instead, as we shall explain, the court's authority to issue the warrant was predicated upon constitutional and statutory provisions governing requisition and extradition processes.

■ Article 4, section 2, of the United States Constitution provides in relevant part that "[a] person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." This clause is not self-executing, but was implemented by Congressional legislation in 1793. *Roberts v. Reilly,* 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885). That legislation now appears as 18 U.S.C. § 3182 and provides:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

The word "magistrate" in 18 U.S.C. § 3182 has reference to any person who is regarded as a magistrate under the law of the state where the alleged crime was committed. 31 AM.JUR.2D *Extradition* § 39 (1967), (citing *Compton v. Alabama,* 214 U.S. 1, 29 S.Ct. 605, 53 L.Ed. 885 (1908)). In Idaho, "magistrates" by statutory definition include district judges. I.C. § 19–503.

■ Additionally, it is well settled that a convict who escapes may be extradited from another state in which he is found, as a fugitive from justice, on the ground that he is a convict whose time has not expired and who, therefore, is "charged with crime" under section 2, article 4, of the United States Constitution. Annot., *Extradition—Paroled or Escaped Convict,* 78 A.L.R. 419 (1932); 31 AM.JUR.2D *Extradition* § 20 (1967); 35 C.J.S. *Extradition* § 10(b)(2) (1960). The Interstate Corrections Compact under which Chapa had been transferred to Oregon by the Idaho correctional authorities contemplates use of the extradition process to deal with escapees.

---

2. I.C. § 19–2601(4) permits a sentencing court to suspend execution of a defendant's judgment of conviction for 120 days immediately following the judgment. Chapa contends that once this time period expires, the sentencing court loses jurisdiction over the defendant. *See State v. Parrish,* 110 Idaho 599, 716 P.2d 1371 (Ct.App. 1986) (court lacks jurisdiction to entertain a motion for sentence reduction made after expiration of 120–day period).

**442**

Article V(b) of the compact (I.C. § 20–701) provides:

> An inmate who escapes from an institution in which he is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition or rendition proceedings shall be that of the sending state, but nothing contained herein shall be construed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of the escapee.

When the Idaho Legislature approved this compact, the Legislature also imposed a special duty on the courts to "enforce this compact and ... do all things appropriate to the effectuation of its purpose and intent...." I.C. § 20–703. We conclude that this statutory duty carried with it the power to issue a bench warrant for fugitives. In this case, we find it fortuitous but salutary that the state, through the prosecuting attorney of Minidoka County, sought an initial determination from the district court where Chapa previously had been convicted and committed to the custody of the board of correction, that Chapa's term of imprisonment remained unsatisfied and that there was probable cause for his arrest as a fugitive. *See* Annot., *Extradition—Probable Cause to Arrest*, 90 A.L.R. 3d 1085 § 4(d) (1979). Upon this determination, through issuance of the bench warrant, the prosecutor then sought a requisition warrant from the Governor of Idaho, I.C. §§ 19–4522, –4523. We hold that the court's issuance of the bench warrant was within its jurisdiction under the Interstate Corrections Compact, as an integral part of the extradition process, rather than under the court's previously exercised sentencing power.[3]

## II

Next, Chapa contends that his procedural rights under the Uniform Criminal Extradition Act were not protected during the extradition process. The particular rights safeguarded by the Act, I.C. § 19–4510, relate to notification to the accused of the charge against him, of his right to counsel and of the opportunity to test the legality of his arrest through a habeas corpus proceeding. However, this statute pertains to a person who is taken into custody *in Idaho* for delivery to an agent under a Governor's warrant for extradition to another state. *See e.g. Kerr v. Watson*, 103 Idaho 478, 649 P.2d 1234 (Ct. App.1982). Whether these or similar rights were available to Chapa upon his arrest in Colorado is a matter controlled by the statutes of that state, not of Idaho. There is nothing in the record before us demonstrating any procedural defalcations in the extradition proceeding in Colorado. If there were any defects in those proceedings, they should have been challenged by Chapa in Colorado. *Palmer v. Dermitt*, 102 Idaho 591, 635 P.2d 955 (1981); *State v. Stewart*, 87 Idaho 210, 392 P.2d 180 (1964). *See also State v. Flint*, 301 S.E.2d 765 (W.Va.1983) (extradition proceedings may be challenged only in asylum state; once fugitive has been brought within jurisdiction of demanding state, propriety of extradition proceedings that occurred in asylum state may not be challenged).

## III

Finally, Chapa contends that the district court had no authority to detain him because his sentences at the ISCI had been fully served. Chapa's argument is twofold. First, he asserts that during his

---

**3.** By disposing of the case on this basis, we do not intimate that a warrant from the court was necessary to the extradition process. The judgment of conviction, together with the affidavit of the records manager at the ISCI, established Chapa's status as a fugitive with an unexpired sentence. However, a warrant may be a useful step in apprehending an escapee. For example, a sheriff could enter a warrant on the National Criminal Identification Center (NCIC) Computer. As a result, when law enforcement authorities come into contact with an escapee, they could inform the sheriff of the escapee's whereabouts, setting the stage for extradition proceedings. *See e.g., State v. Teal,* 105 Idaho 501, 670 P.2d 908 (Ct.App.1983).

escape he was not "voluntarily" absent from the penitentiary within the meaning of I.C. § 20–209A,[4] following his release by a magistrate in Ada County. Again, he asserts he was told he was "free to go." Second, he claims he is entitled to a "good time" credit occurring during the time he was in custody in penal confinement. We are not persuaded.

The dismissal of the escape charge by the Ada County magistrate, and that court's alleged failure to forthwith order Chapa's return to confinement under the original sentences, did not place Chapa at liberty involuntarily. The magistrate simply failed to terminate the "voluntary absence" begun by Chapa through his escape from the Oregon institution. Even if the magistrate's inaction was deemed to be a release "by legal means," the Legislature has declared that the period a prisoner is at large thereafter must not be considered as part of the term to be served. I.C. § 18–309. It is entirely illogical that a prisoner who escapes from incarceration should be permitted accrual of time toward his sentences while he is at large.

As to Chapa's "good time" credit (I.C. § 20–101A), we note that no evidence was offered in the proceeding below from which it could be determined what credit, if any, might be applied to Chapa's sentences. Needless to say, no credit could be earned during the period of escape. As to the period of confinement, the determination of any entitlement to a credit would lie with the Board of Correction. A credit is not automatic; it depends upon the record of the inmate's conduct while in custody. *State v. Rosencrantz*, 110 Idaho 124, 714 P.2d 93 (Ct.App.1986); *State v. Miller*, 105

Idaho 838, 673 P.2d 438 (Ct.App.1983). Because no evidence was presented to the court below on this point, we are unable to find any error in the district court's refusal to recognize a credit or to release Chapa on the ground that his sentences had been served.

Accordingly, the order denying Chapa's petition for a writ of habeas corpus is affirmed.

BURNETT, J., and SMITH, J. Pro Tem., concur.

---

4. I.C. § 20–209A provides:

*Computation of term.*—When a person is sentenced to the custody of the board of correction, his term of confinement begins from the day of his sentence. A person who is sentenced may receive credit toward service of his sentence for time spent in physical custody pending trial or sentencing, or appeal, if that detention was in connection with the offense for which the sentence was imposed. *The time during which the person is voluntarily absent from the penitentiary, jail, facility under the control of the board of correction, or from the custody of an officer after his sen-*

tence, shall not be estimated or counted as a part of the term for which he was sentenced. [Emphasis added.]

Similarly, with respect to the computation of a term of imprisonment, I.C. § 18–309 provides in relevant part:

The remainder of the term commences upon the pronouncement of sentence and if thereafter, during such term, the defendant by any legal means is temporarily released from such imprisonment and subsequently returned thereto, the time during which he was at large must not be computed as part of such term.